IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ARTHUR L. SCOTT-EL,

    Petitioner,

v.

UNITED STATES PAROLE
COMMISSION, *et al.*,

    Respondents.

CIVIL NO. 4:CV-04-491

(Judge Jones)

# ORDER

## September 18, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Petitioner Arthur Scott-El ("Petitioner" or "Scott-El"), an inmate at Allenwood Federal Correctional Institution, White Deer, Pennsylvania ("FCI-Allenwood"), commenced the above-captioned action by filing a *pro se* Petition for Writ of Habeas Corpus (doc. 1) pursuant to the provisions of 28 U.S.C. § 2254. Named as Respondents are the United States Parole Commission ("Parole Commission") and FCI-Allenwood Warden Stan Yates. By Order dated March 22, 2004 (doc. 3), Respondents were directed to answer the Petition. On April 26, 2004, Respondents filed their Response to the Petition for Writ of Habeas Corpus. (Rec. Doc. 8). For the reasons outlined below, the Petition will be denied.

Following a jury trial in the Superior Court for the District of Columbia, Scott-El was convicted of armed burglary, armed rape, sodomy, armed assault with intent to

commit rape, and carrying a dangerous weapon. In 1983, he was sentenced to a thirty (30) year, four (4) month to life term of imprisonment.

Petitioner's present action does not seek to collaterally attack his conviction or sentence. Rather, he contends that the Parole Commission violated his constitutional rights in denying his request for parole by engaging in a prejudicial and biased application of its guidelines for District of Columbia ("D.C.") Code offenders.

On January 30, 2003, the Parole Commission conducted the Petitioner's initial parole hearing. Scott-El claims that the Hearing Examiner violated his equal protection rights by: (1) using "two base point scores to assess and determine petitioner's parole suitability and eligibility"[1] and (2) employing the Punitive Section of the guidelines for D.C. Code offenders codified at 28 C.F.R. § 2.80 while ignoring the Program Section of those same regulations. See Rec. Doc. 1, ¶ 9. The Petitioner also asserts that because he is a sex offender, the Hearing Examiner intentionally withheld his superior academic achievements from consideration and engaged in an erroneous assessment and calculation computation. As relief, his petition seeks a new parole review hearing.

---

[1] See Rec. Doc. 1, ¶ 9(a). Scott-El asserts that he was initially assessed a point base score of 6, but a subsequently issued Notice of Action assigned him a point base score of 7.

**DISCUSSION:**

**Standard of Review**

28 U.S.C. § 2241 vests the federal district courts with jurisdiction to grant a Writ of Habeas Corpus to persons in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). The Court of Appeals for the Third Circuit has routinely recognized that a federal court's review of a decision issued by the Parole Commission is limited to an "abuse of discretion" standard.

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). A federal district court needs only to consider whether the record provides a rational basis for the Parole Commission's ruling. Gambino v. Morris, 134 F.3d 156, 160 (3d Cir. 1998). The district court must ensure that the Parole Commission has followed appropriate criteria rational and consistent with its enabling status and that its "decisions are neither arbitrary and capricious nor based on impermissible considerations." Id. (citation omitted).

Furthermore, the Third Circuit has noted that, when the Parole Commission issues any written determinations, it "must reveal <u>reasoning</u> and not simply present conclusions, at least where the reasoning is not apparent from the facts of the case." Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir. 1988) (emphasis in original); see also Greene v. United States Parole Comm'n, 749 F. Supp. 650, 654 (M.D. Pa. 1990). The

court in Marshall added that "Congress has required the Commission to furnish a statement of reasons to the prisoner so that he can receive 'an understandable explanation of his parole status.'" Id. at 942 (citations omitted).

**Two Different Base Point Scores**

Petitioner's initial argument for relief contends that the Hearing Examiner who conducted his initial parole review assigned him a base point score of 6. However, Scott-El claims that a subsequent Notice of Action issued by the Parole Commission arbitrarily assigned him a base point score of 7. He concludes that the Parole Commission's increase in his base point score without explanation violated his constitutional rights.

The Parole Commission acknowledges that it issued a Notice of Action on February 19, 2003 that reported his base point score as being six (6) points. See Rec. Doc. 8, Ex. 5, p. 2. Respondents assert that this guideline calculation was inaccurate and note that a corrected Notice of Action issued on April 19, 2004 correctly assigned Petitioner a seven (7) point base point score. See id. at Ex. 6. The Respondents conclude that since the clerical and arithmetic error referenced by Scott-El has been corrected, his initial claim should be dismissed on the basis of mootness.

A review of Petitioner's Initial Prehearing Assessment dated January 22, 2003 indicates that Scott-El was initially assigned a base point score of 7. See id. at Ex. 2, p. 2. The written, February 7, 2003, D.C. Adult Initial Hearing Summary of his January 30, 2003 initial parole review hearing likewise assigned Scott-El a seven (7)

4

base point score.  See id. at Ex. 3, p. 2.  Those undisputed records clearly substantiate the Respondents' argument that Scott-El was initially assigned a seven (7) base point score and that the  February 19, 2003 Notice of Action listing of a six (6) base point score was simply an unintentional clerical and/or mathematical error.  Since a corrected Notice Of Action thereafter issued by the Parole Commission reinstated the original determination of a seven (7) point base point score and set forth a rational basis for said conclusion, there is no basis for federal habeas corpus relief.

**Equal Protection**

Petitioner next asserts that the standards and regulations applied by the Parole Commission during his initial parole review were "materially harsher" than those employed under the former applicable D.C. regulations.  Doc. 1, Aff., p. 1.  Scott-El indicates that because there are significant differences between those two sets of regulations, his equal protection rights were violated by the Parole Commission.

To establish a viable equal protection violation, one must show an intentional or purposeful discrimination.  Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986).  Equal protection claims are subject to a two-part analysis.  See Cleberne v. Cleberne Living Center, 473 U.S. 432 (1985).  First, a petitioner must first show that he has been treated differently from similarly situated individuals.  If a such a showing is made, the respondent then has to show that the different treatment is rationally related to a legitimate interest.  Id. at 440.  The standard for equal protection analysis in relationship to prisoners *qua* prisoners (i.e., in

the absence of other characteristics that may make an individual a member of a suspect class) is rational basis, not heightened scrutiny.  See Jackson v. Thornburgh, 907 F.2d 194, 196-7 (D.C. Cir. 1990); Thornton v. Hunt, 852 F.2d 526 (11th Cir. 1988).

In determining whether the instant Petitioner is being denied equal protection, the class to which he belongs consists of the persons confined as he was confined, subject to the same treatment to which he was subject.  See  Moss v. Clark, 886 F.2d 686, 691 (4th Cir. 1989) ( "[i]t is rational to conclude that 'it would be deleterious to prisoner morale, discipline, and rehabilitation if persons confined within the same prison, perhaps within the same cell, were subject to different standards for release on parole.'" ) (citing Cosgrove v. Smith, 697 F.2d 1125, 1144 (D.C. Cir. 1983)).

Pursuant to the provisions of National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Petitioner was transferred into the jurisdiction of the Parole Commission.  Prior to August 5, 1998, the Parole Commission, in making a determination as to the suitability of D.C. offenders for release on parole, employed the parole laws and regulations developed by the District of Columbia.  See D.C. Code § 24-204.   All D.C. offenders considered for parole after said date are considered under the regulations set forth at 28 C.F.R. § 2.80.

In the present case, Scott-El was clearly not initially considered for release on parole until after August 5, 1998.  Thus, it was appropriate for the Parole Commission

to review his initial parole application in accordance with the standards set forth in § 2.80. The treatment afforded D.C. prisoners sentenced prior to the Revitalization Act as opposed to those sentenced after the Act does not violate equal protection. See Crosby-Bey v. District of Columbia, 700 F. Supp. 71 (D. D.C. 1988). Prisoners may clearly be subjected to reforms or changes in parole regulations. Since there are no facts showing that Petitioner was treated differently than any similarly situated D.C. offender, a viable equal protection claim has not been stated.

### *Ex Post Facto*

It is conceivable that the Petitioner is also attempting to assert a claim that the Parole Commission's employment of the § 2.80 standards in his case constituted a violation of the *Ex Post Facto* Clause of the United States Constitution.

A new law or policy violates the *Ex Post Facto* Clause when it is applied to events that occurred prior to its enactment and disadvantages the offender affected by it. Weaver v. Graham, 450 U.S. 24, 29 (1981). "One function of the *ex post facto* Clause is to bar enactments, which by retroactive operation increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000). A retroactive application of a change in parole laws if applied rigidly or mechanically can constitute an *ex post facto* violation. See Bonilla v. Vaughn, 1998 WL 480833 at *7 (E.D. Pa. 1998). However, a petitioner must show that the parole policy change was given retrospective effect and that its retrospective application created a real risk of increasing the measure of the prisoner's punishment. See Tyler v. Cain, 2006 WL

2038398 at * 1 (M.D. Pa. July 19, 2006); <u>Richardson v. Pa. Parole Board</u>, 423 F.3d 282, 288 (3d Cir. 2005).

Under the Revitalization Act, the Parole Commission was given authority to make parole decisions for D.C. Code offenders such as Scott-El. The Parole Commission was also granted permission to amend and supplement the D.C. parole rules. Based on this Court's review of the record, Petitioner has failed to demonstrate how the application of the federal parole guidelines for D.C. Code offenders negatively affected his parole status. It is apparent that discretionary factors affected Scott-El's parole eligibility under the federal parole guidelines. However, those discretionary factors (most notably the violent nature of Petitioner's crimes, his failure to participate in a sex offender program, and the need for psychological counseling) also would have affected the outcome of his case under the prior D.C. Parole Board guidelines.

In <u>Hollingsworth Bey v. Zenk</u>, Civil No. 1:CV-01-1643, slip op. at 20 (M.D. Pa. June 12, 2002)(Caldwell, J.), Judge William Caldwell of this Court dismissed a similar argument that the Parole Commission's application of its parole guidelines for D.C. Code offenders ,as opposed to the D.C. Guidelines, was an *ex post facto* violation. This Court and others have reached the same conclusion. See <u>Brown v. Williamson</u>, 2006 WL 189166 at *2 (M.D. Pa. May 23, 2006)(Jones, J.); <u>Allston v. Gaines</u>, 158 F. Supp. 2d 76 (D.D.C. 2001).

The D.C. guidelines and the Parole Commission's guidelines for D.C. Code offenders similarly provide that the parole officials have discretion to grant or deny

parole notwithstanding the guidelines. Based on that provision, Scott-El has not established that he was materially disadvantaged by the Parole Commission's D.C. offender guidelines and therefore cannot satisfy the criteria for an *ex post facto* violation. Pursuant to the above discussion, this Court concludes that the Parole Commission's employment of its guidelines for D.C. offenders in denying Scott-El release on parole was not violative of the *Ex Post Facto* Clause.

**Superior Academic Achievement**

Petitioner's next claim asserts that he was improperly denied a finding of superior academic achievement by the Hearing Examiner. The guidelines for D.C. offenders defines superior program achievement as program achievement that is beyond the level that the prisoner might ordinarily be expected to accomplish. It is undisputed that during the course of his prolonged incarceration, Scott-El completed numerous enrichment programs, as well as earned multiple associate degrees and a bachelor of arts degree.

Despite those commendable accomplishments, the Hearing Examiner declined to award Scott-El credit for superior academic achievement. Respondents argue that his decision was premised on Petitioner's failure to undertake and complete sex offender treatment programs. They further contend that under Stevens v. Quick, 678 A.2d 28, 31 (D.C. App. 1996), since this determination regards a D.C. prisoner, it is not reviewable on the merits.

The Initial Prehearing Assessment contains no mention of the various college degrees earned by Petitioner. However, the written summary of the initial hearing

9

clearly acknowledges that Scott-El attained associate degrees and a bachelor of arts. The summary notes that despite those accomplishments, Petitioner needed to obtain psychological counseling and complete sex offender programming. In the present case, Petitioner was convicted of sex offenses. Despite being incarcerated for approximately twenty (20) years and attending numerous academic programs and other institutional programming, Scott-El never completed any sex offender treatment programs. It appears that the failure to do so precluded a finding of superior program achievement by the Hearing Examiner.

The merits of the Hearing Examiner's discretionary determination was neither arbitrary nor capricious. This is not a case where the Hearing Examiner ignored the Petitioner's academic success, rather, it revolves around Scott-El's 20 year failure to attend sex offender treatment. Furthermore, the motivation (Scott-El's lack of participation in sex offender programs) underlying the decision to deny superior program achievement is both clearly outlined and apparent from the facts of this case.

**CONCLUSION:**

In conclusion, a clerical, mathematical error that appears in the Parole Commission's February 19, 2003 Notice of Action, and that was subsequently rectified by its April 19, 2004 Notice of Action, does not provide Petitioner with a basis for federal habeas corpus relief.

Second, the Parole Commission acted properly in applying its guidelines for D.C. Code offenders to Scott-El's initial parole review. The use of said parole guidelines did not violate petitioner's the Equal Protection or the *Ex Post Facto*

Clauses of the United States Constitution.  Finally, the failure of Petitioner to be awarded credit for superior academic achievement was justified in light of Scott-El's 20 year failure to undertake or complete any sex offender treatment programs.  The Petition for Writ of Habeas Corpus is denied.[2]

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

    1.    The Petition for Writ of Habeas Corpus is **DENIED**.

    2.    The Clerk of Court is directed to **CLOSE** the case.

    3.    Based on the Court's determination herein, there is no basis for the issuance of a Certificate of Appealability.

        s/ John E. Jones III
        John E. Jones III
        United States District Judge

---

[2] It is additionally noted that the present Petition sought only a new parole review.  Because the record indicates that Scott-El was scheduled for a parole reconsideration hearing earlier this year, he may already been afforded the relief sought by this action, thus, rendering it moot.